UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 3:23-cr-144-MMH-MCR

MARKEE WASHINGTON
_____/

### REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendant's Motion to Suppress Physical Evidence and Statements and Memorandum of Law ("Motion") (Doc. 25) and the Government's Response in Opposition thereto ("Response") (Doc. 28). The Motion was referred to the undersigned for a report and recommendation on November 30, 2023, and an evidentiary hearing was held on December 19, 2023.[2] For the reasons stated herein, it is respectfully **RECOMMENDED** that the Motion be **DENIED**.

---

[1] A party has fourteen days from the date the party is served a copy of this Report and Recommendation to file written objections to the Report and Recommendations factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

[2] The transcript of the hearing (cited as "Tr." followed by the appropriate page number was filed on January 7, 2024. (Doc. 39.)

I.  **Introduction**

In a two-count indictment, a federal grand jury charged Defendant, Markee Washington, with (1) knowingly possessing, in and affecting interstate and foreign commerce, a firearm (Glock pistol) after previously having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e); and (2) knowingly possessing a machinegun, in violation of 18 U.S.C. §§ 922(o)(1) and 924(a)(2).  (Doc. 1.)

On November 30, 2023, Defendant moved to suppress the firearm seized from the vehicle he was operating and any statements he made to law enforcement officials on February 11, 2023.  (Doc. 25 at 1.)  He argues that the items seized as a result of a stop and subsequent search of the vehicle and of his person were without probable cause or, alternatively, undue delay resulting from the stop and in processing civil traffic citations, violated his Fourth Amendment rights.  (*Id.*)  Defendant further argues that the statements he made during the traffic stop should also be suppressed because they were obtained by law enforcement officers subsequent to an illegal stop, seizure, and search in violation of his constitutional rights under the Fourth Amendment.  (*Id.* at 6.)

## II.     Evidence Presented at the Hearing[3]

### A.     Trooper Tber's Testimony

The Government presented the testimony of Tariq Tber, who has been a state trooper with the Florida Highway Patrol ("FHP") for approximately eight years. (Tr. 33.) In his role, Trooper Tber is charged with, among other duties, "traffic enforcement, investigating traffic crashes, and interdiction—interdicting criminal activity upon the roadways in the state of Florida." (Tr. 6.) Trooper Tber testified that as part of his training, he learned to identify marijuana by smell. (Tr. 8.) He further testified that over the course of his career he has conducted hundreds of traffic stops concerning window tint violations, which included many stops that occurred at night. (*Id.*)

Trooper Tber testified that on February 11, 2023, at approximately 10:45 p.m., he was parked near the intersection of Boulevard Street and West 21st Street in Jacksonville, Florida when he saw a vehicle turn on to Boulevard Street traveling northbound. (Tr. 15, 37.) Although it was dark and slightly raining that night, Trooper Tber observed that he could not see through the windows of the vehicle, which indicated to him, based on his

---

[3] At the evidentiary hearing, the following exhibits were admitted into evidence: Government's Exhibits 1A (the dashcam video of the traffic stop, investigation, and arrest of Defendant from Trooper Tber's vehicle), 1B (screen shots from the dashcam video showing the car Defendant was driving), 1C (a satellite map of the area where the stop took place), 1D (Trooper Tber's incident report), 2A (a video of the traffic stop from Officer Austin Weippert's body camera), and 3A (a video of the traffic stop from Officer Anthony Prescott's body camera).

3

experience, that the tint on the vehicle was illegal. (Tr. 20, 22.) As a result, Trooper Tber decided to conduct a traffic stop on the vehicle. (*Id.*)

Shortly after initiating the stop, Officers Austin Weippert and Anthony Prescott arrived on the scene to assist. (Tr. 24, 57, 58, 75, 76.) Both officers are employed with the Jacksonville Sheriff's Office ("JSO") and are assigned to patrol the area where the traffic stop took place. (Tr. 55, 71.) Trooper Tber was the first to make contact with the Defendant and immediately asked him to lower his windows, informed Defendant that the basis for the stop was the illegal window tint, and then asked to see his driver's license. (Tr. 24-25.) In turn, Defendant explained to Trooper Tber that although he did have a valid driver's license, he did not have it with him at the time of the stop. (*Id.*) Defendant also informed Trooper Tber that he was not the owner of the vehicle. (BC at 1:20-25.)[4] Subsequently, Trooper Tber asked Defendant to step out of the vehicle and walk with him back to his patrol unit so that he could verify Defendant's information. (Tr. 25.)

While Defendant was exiting the vehicle, Trooper Tber asked if he had any medical marijuana or hemp in the vehicle. (Tr. 26.) Trooper Tber

---

[4] As previously noted, the Court admitted several audio-video recordings of the incident on February 11, 2023, which included footage from Trooper Tber's vehicle and body camera ("BC") footage from Officers Weippert and Prescott. (Tr. 16, 60, 77.) The audio-video recording from Officer Weippert's body cam provides the most functional footage. Accordingly, it will be cited throughout as "BC" followed by the appropriate time stamp.

4

testified that he asked this question because he smelled the odor of burnt marijuana as he was standing next to the vehicle. (*Id*; Tr. 78.) Defendant's response to Trooper Tber's question concerning the marijuana was "yes sir, I had smoked." (Tr. 26; BC at 1:30-40.) Based on his response, the officers asked Defendant if he had a medical marijuana card. (Tr. 26-27.) Defendant informed the officers that he did have a valid medical marijuana card, but he did not have the card in his possession. (Tr. 27; BC at 2:05-12.) Trooper Tber later confirmed that Defendant did in fact have a valid medical marijuana card and driver's license. (Tr. 28, 43.)

After Trooper Tber finished verifying Defendant's information, he informed Defendant that he needed to have the medical marijuana card with him if he was in possession of marijuana or hemp, and that the marijuana needed to be stored in an approved container. (Tr. 29; BC at 10:50-11:15.) Trooper Tber then informed Defendant that he was "going to take a quick look in[side] the vehicle [to] make sure that everything checked out, and [then Defendant] would be good to go." (*Id*.; Tr. 30.)

Trooper Tber placed Defendant in the back of his patrol car and he and the other officers commenced the search of the vehicle. (BC at 11:25-27:30.) Ultimately, there was no marijuana found in the vehicle; however, the officers did find a Glock pistol, loaded with 31 rounds of ammunition and

5

equipped with a Glock-switch.[5]  (Tr. 31-32.)  The officers also found a small amount of marijuana on Defendant's person.  (Tr. 32.)

## B.     Officer Prescott's and Officer Weippert's Testimony

The Government also presented the testimony of Officers Austin Weippert and Anthony Prescott.  Officer Weippert has been with JSO for approximately two years and Officer Prescott has been with JSO for approximately five years.  (*Id.*)  Both officers testified to conducting many traffic stops during their time with JSO, including traffic stops for illegal window tint that occurred at night.  (Tr. 57, 73.)  The officers also testified that during the course of their careers, they had hundreds of encounters with marijuana and are familiar with the fragrance it produces.  (Tr. 57, 74.)

Both officers testified that when they arrived on the scene, they immediately observed that the tint on the vehicle Defendant was driving appeared to exceed the legal limit.  (Tr. 61, 78.)  In fact, upon walking up to the vehicle, Officer Prescott exclaimed, "[t]his is the darkest tint I've ever seen," and in response, Officer Weippert exclaimed, "[I] can't see nothing through it."  (*Id.*; BC at 1:00-1:10.)[6]

---

[5] A Glock switch is a small device that can be attached to the rear of the handgun, converting the semi-automatic pistol into a fully automatic.

[6] Testing later confirmed that the officers' suspicion was correct—Defendant's tint tested at 3% while the legal limit is 28%.  (Tr. 23-24.)

Officer Prescott testified that he also smelled the odor of burnt marijuana during the initial stop. (Tr. 78.) Both officers also testified that the Defendant told them that he had smoked, that he did not have his medical marijuana card, and that he did not have the marijuana stored in an approved container. (Tr. 63, 80; BC at 2:12-25.)

### III. Discussion

#### A. Law Enforcement Had Probable Cause to Initiate the Traffic Stop

The Fourth Amendment to the Constitution guarantees individuals the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. The interests of justice require the suppression of physical evidence when that evidence is obtained in violation of an individual's Fourth Amendment rights. *Terry v. Ohio,* 392 U.S. 1, 28 (1968). This Constitutional protection applies whether an individual is in a private setting or on a public street. *Id.* at 8–9.

A traffic stop is a "seizure" under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10 (1996); *United States v. Spoerke*, 568 F.3d 1236, 1248 (11th Cir. 2009). "[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *United States v. Williams*, 238 F. App'x. 566, 567

7

(11th Cir. 2007) (quoting Whren 517 U.S. at 810); *see also United States v. Becerra–Becerra*, 437 F. Appx. 827, 828 (11th Cir. 2011).

### Section 316.2953 of the Florida Statutes

Section 316.2953 limits window tinting on the windows in front of or adjacent to the operator's seat. Fla. Stat. § 316.2953. This statute provides that:

> A person shall not operate any motor vehicle on any public highway, road, or street on which vehicle the side wings and side windows on either side forward of or adjacent to the operator's seat are composed of, covered by, or treated with any sunscreening material or other product or covering which has the effect of making the window nontransparent . . . A sunscreening material is authorized for such windows if, when applied to and tested on the glass of such windows on the specific motor vehicle, the material has a total solar reflectance of visible light of not more than 25 percent as measured on the nonfilm side and a light transmittance of at least 28 percent in the visible light range. A violation of this section is a noncriminal traffic infraction.

*Id.*

Here, Trooper Tber testified that he observed the window tint on the vehicle that Defendant was driving appeared to be illegally dark, which prompted him to conduct a traffic stop. (Tr. 20, 22.) Although Defendant's Counsel attempted to attack Trooper Tber's credibility on cross examination, the undersigned credits Trooper Tber's account of the stop, as footage from his vehicle's camera and Officer Weippert's body-worn camera corroborates his testimony. (Government's Exhibits 1A & 2A.) Altogether, the law

enforcement officers' testimony was consistent, plausible, uncontroverted, and based on their experience issuing hundreds of traffic citations for illegal window tint presumably in all types of circumstances, including at night time. Defendant has introduced no evidence to contradict the officers' account of events.

Furthermore, under Florida law, driving with illegal window tint is a traffic violation that provides a valid basis for a traffic stop. *United States v. Pierre*, 825 F.3d 1183, 1192 (11th Cir. 2016) (citing Fla. Stat. § 316.2953); *see also State v. Moore*, 791 So.2d 1246, 1249 (Fla. Dist. Ct. App. 2001). Therefore, Trooper Tber was authorized to conduct a traffic stop of the vehicle to determine whether the windows were, in fact, "darker than permitted under Florida law, Fla. Stat. §§ 316.2953, 3162954." *United States v. Wilbur*, 458 F. App'x 829, 830 (11th Cir. 2012); s*ee also Pierre*, 825 F.3d at 1192 (concluding probable cause existed to stop a car for illegally tinted windows based on the officer's credible testimony that he was unable to see inside the car).

### B. Law Enforcement Had Probable Cause to Search the Vehicle

"Under the automobile exception to the warrant requirement, the police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *United States*

*v. Delva*, 922 F.3d 1228, 1243 (11th Cir. 2019) (quotations omitted and alterations adopted). And under longstanding Circuit precedent, the smell of marijuana is enough to provide probable cause. To be sure, well established Eleventh Circuit precedent instructs that "an officer's credible testimony that he smelled marijuana can establish probable cause." *United States v. Dixon*, 901 F.3d 1322, 1339 (11th Cir. 2018) (citing *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (en banc)).

Even in light of this authority, Defendant contends that the smell of marijuana, by itself, can no longer establish probable cause in Florida because the State legalized hemp and medical marijuana. (*See* Doc. 25 at 3.) This argument is unpersuasive.

A recent opinion from this district, *United States v. Hardin*, is instructive in this regard. No. 320CR93S1MMHJBT, 2022 WL 19267 (M.D. Fla. Jan. 3, 2022). Akin to this case, the defendant in *Hardin* maintained that "the smell of marijuana [could not] contribute to a finding of [probable cause] because hemp was legal in Florida at the time of the [challenged] stop" and that rulings issued by courts before then were "outdated." *Id.* at *3. The court in *Hardin* rejected this argument, noting that "the Eleventh Circuit continues to affirm that the smell of burnt marijuana can provide probable cause to search a vehicle." *Id.* at *4 (citing *United States v. Reed*,

10

No. 21-10257, 2021 WL 5629980, at *2 (11th Cir. Dec. 1, 2021) (per curiam); *Merricks v. Adkisson*, 785 F.3d 553, 560 n.3 (11th Cir. 2015)).

Furthermore, Florida state courts have reached a similar conclusion. *See, e.g.*, *Owens v. State*, 317 So. 3d 1218, 1220 (Fla. Dist. Ct. App. 2021) ("[W]e conclude that the recent legalization of hemp, and under certain circumstances marijuana, does not serve as a sea change undoing existing precedent, and we hold that regardless of whether the smell of marijuana is indistinguishable from that of hemp, the smell of marijuana emanating from a vehicle continues to provide probable cause for a warrantless search of the vehicle."). Notably, Defendant does not cite a single decision that would lead to a contrary conclusion. *Cf. Hardin*, 2022 WL 19267, at *4 (highlighting that the defendant "cite[d] no authority for his argument that Florida's new hemp law change[d] th[e] [probable cause] analysis").

Here, from the outset of the traffic stop, Trooper Tber, a trained and experienced interdiction officer, smelled marijuana, which gave him probable cause to believe that Defendant possessed marijuana and that a search of the car would yield evidence of that crime. Trooper Tber's testimony was confirmed in part by Defendant's admissions during the stop that (1) "he had smoked," (2) he did not have his medical marijuana card with him—yet he had marijuana in his possession, and (3) the marijuana was not properly stored. (Tr. 26, 30; BC at 1:30-40, 2:05-12, 10:50-11:15.) Thus, the search of

11

the car was permissible under the "automobile exception" to the Fourth Amendment's warrant requirement.

### C. Because There Was Probable Cause to Believe that Defendant Possessed Marijuana from the Outset of the Stop, Law Enforcement Was Justified in Extending the Stop

"[O]fficers cannot unlawfully prolong a stop," once lawfully initiated, without violating the Fourth Amendment. *United States v. Campbell*, 26 F.4th 860, 881 (11th Cir. 2022) (en banc). That said, an officer does not prolong a traffic stop when he undertakes "ordinary inquiries incident to" the stop. *Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (quotations omitted). "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id*. Officers may also "attend to related safety concerns" without unlawfully prolonging a stop. *Id*. at 354. In other words, "to unlawfully prolong, the officer must (1) conduct an unrelated inquiry aimed at investigating other crimes (2) that adds time to the stop (3) without reasonable suspicion [or probable cause]." *Campbell*, 26 F.4th at 884 (footnote omitted).

Defendant argues that the officers unlawfully prolonged the traffic stop because the stop's initial business, dealing with his minor traffic infraction, had concluded. This argument is also unavailing.

12

As stated *supra*, from the outset of the stop, Trooper Tber had probable cause to believe that Defendant illegally possessed marijuana and that a search of the car would reveal evidence of that crime. As a result, Defendant did not have "a right to be released the instant the steps to check license, registration, and outstanding warrants, and to write a ticket, had been completed." *United States v. Childs*, 277 F.3d 947, 953 (7th Cir. 2002).

Under similar circumstances, this Court has found that unreasonable delay was not an issue because the officer had probable cause to search from the outset of the traffic stop. *See United States v. Andrews*, No. 3:17-cr-215-J-20MCR, 2018 WL 1786996, at *10 (M.D. Fla. Mar. 16, 2018) (report and recommendation adopted, 2018 WL 1783802 (M.D. Fla. Apr. 13, 2018)) ("Here, Trooper Earrey smelled marijuana at the outset of the traffic stop, which gave him probable cause to search the car and detain Defendant.") Accordingly, in this instance "the normal time limits for traffic stops do not apply," therefore, the undersigned finds that the officers did not unlawfully prolong the stop. (*Id.*)

### D.  Fruit of the Poisonous Tree

"Ordinarily, evidence secured by the exploitation of the illegality of a search or seizure is 'the tainted fruit of a poisonous tree' and is not admissible at trial." *United States v. Waksal*, 709 F.2d 653, 662 (11th Cir. 1983) (citing *Wong Sun v. United States*, 371 U.S. 471 (1963) and *Dunaway v.*

13

*New York*, 442 U.S. 200, 218–19 (1979)); *see also United States v. Davis*, 313 F.3d 1300, 1302 (11th Cir. 2002) (per curiam) ("Evidence seized after an illegal seizure should be suppressed as the 'fruit of the poisonous tree.'") (citation omitted).

In evaluating whether evidence constitutes fruit of the poisonous tree, "the relevant question is 'whether, granting establishment of the primary illegality, the evidence to which [the] instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Davis*, 313 F.3d at 1302–03 (quoting *Wong Sun*, 371 U.S. at 488). The Supreme Court has identified several factors pertinent to this inquiry: the " 'temporal proximity' between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional search"; the "presence of intervening circumstances"; and the "purpose and flagrancy of the official misconduct." *Utah v. Strieff*, 579 U.S. 232, 239 (2016) (quoting *Brown v. Illinois*, 422 U.S. 590, 603–04 (1975)).

Defendant asserts that the evidence seized during the stop should be excluded as the "fruit of the poisonous tree" because it was based on an illegal search and seizure. (Doc. 25 at 5-6.) After review, Defendant's fruit of the poisonous tree argument is also unmeritorious.

To be sure, in light of the undersigned's finding that probable cause existed for the search and subsequent seizure, Defendant's Fourth Amendment rights were not violated. As such, there is no support for the evidence being suppressed as fruit of the poisonous tree. *See United States v. Epps*, 613 F.3d 1093, 1100 (11th Cir. 2010) (The deputy's subsequent detention of [defendant] was a lawful warrantless seizure, which means that none of the evidence obtained from the seizure was tainted."); *see also United States v. Lopez–Garcia*, 565 F.3d 1306, 1315 (11th Cir. 2009) (holding that, because the defendant's seizure and arrest were constitutional, "neither of his subsequent statements was tainted by those events" and his "Fourth Amendment fruit of the poisonous tree argument plainly collapses").

### E. Defendant's Statements to Law Enforcement are Admissible

Finally, Defendant argues that the Court must suppress his statements to the officers because he was subjected to an illegal stop, detention, and search. However, as shown above, the stop, detention, and search were all lawful. As such, there are no grounds to suppress Defendant's statements.

### IV. Recommendation

Based on the foregoing, it is respectfully **RECOMMENDED** that the Motion (**Doc. 25**) be **DENIED**.

15

**DONE AND ENTERED** at Jacksonville, Florida, on February 20, 2024.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia M. Howard
United States District Judge

Counsel of Record